[Cite as *State v. Duncan*, 2011-Ohio-2787.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   95491

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRIAN K. DUNCAN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-532297

**BEFORE:**    Boyle, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:**    June 9, 2011

**ATTORNEY FOR APPELLANT**

Craig W. Smotzer
1914 Clark Avenue
Cleveland, Ohio   44109

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Scott Zarzycki
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶ 1}  Defendant-appellant, Brian Duncan, appeals his conviction and sentence for gross sexual imposition.   He raises three assignments of error for our review:

{¶ 2}  "[1.] Appellant's conviction for gross sexual imposition [under R.C. 2907.05(A)(1)] is against the manifest weight of the evidence.

{¶ 3}  "[2.] The trial court erred in denying appellant's motion for acquittal as to the charges and whether the state presented sufficient evidence that appellant was involved in

and/or knowingly committed these crimes.

{¶ 4}   "[3.] The trial court erred in sentencing appellant to the maximum prison sentence permitted by law absent of findings required by Ohio's felony sentencing statute."

{¶ 5}   After a thorough review of the record and pertinent law, we find no merit to Duncan's assigned errors and affirm.

## Procedural History

{¶ 6}   The grand jury indicted Duncan on five counts: Counts 1 and 2, kidnapping, in violation of R.C. 2905.01(A)(2) and (A)(4), with sexual motivation and sexually violent predator specifications; Count 3, rape, in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification; Count 4, unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), with a furthermore clause that Duncan was "ten or more years older than the victim"; and Count 5, gross sexual imposition, in violation of R.C. 2907.05(A)(1), with a sexually violent predator specification.

{¶ 7}   The sexually violent predator specifications were tried to the court, and the remaining charges and specifications were tried to a jury.  After the state rested, Duncan moved for a Crim.R. 29 acquittal, which the trial court granted with respect to Count 4, unlawful sexual conduct with a minor.

{¶ 8} The jury found Duncan guilty of Count 5, gross sexual imposition, but not guilty of the remaining counts. The trial court found that Duncan was not a sexually violent predator.

{¶ 9} The trial court sentenced Duncan to 18 months in prison, notified him that he would be labeled a Tier I sex offender, and further notified him that he would be subject to five years of mandatory postrelease control upon his release from prison.

### Jury Trial

{¶ 10} The victim, K.M., testified that in August 2008 when the alleged incident occurred, she lived with her father, her son, and Duncan. She was 16 years old at that time. The home they lived in was next door to Lorenzo's Dog Training Service, and was owned by "Lorenzo." Duncan and K.M.'s father trained dogs for Lorenzo, and K.M. worked there as a secretary. Duncan and K.M.'s father had been friends for years, even before they worked together at Lorenzo's. K.M. referred to Duncan as "Uncle Brian."

{¶ 11} On the day of the alleged incident, Duncan drove K.M. to pick up her son from daycare. When they returned, K.M. went to Lorenzo's to clean. Duncan also went to Lorenzo's to complete some work. When they were done working, K.M. and Duncan returned home. K.M. began cooking dinner for her father, his girlfriend, Margarita Rodriguez, and Duncan. At some point, K.M.'s father and his girlfriend went to the store.

{¶ 12} What happened next is in dispute. K.M. testified that while she was standing at the stove, Duncan "pulled the back of [her] jeans and had pulled [her] to him and sat [her] in his lap and whispered in [her] ear can [she] keep her mouth shut." K.M. said that she just got up, went to the living room, and waited for her dad to return.

{¶ 13} According to Duncan, he was sitting at the table taking care of some paperwork when K.M. walked by him and "bumped [him] with her hip." Duncan said it made him uncomfortable. "The next thing" Duncan knew, K.M. "walked around to the side of [him], *** and she backed up like she was trying to sit on [his] leg." Duncan testified that he told her "no," got his things, and went upstairs.

{¶ 14} Later, K.M. said that she had gone to bed. She was in her room on the phone with her boyfriend when Duncan called. She said that Duncan asked her why she had not told her father about what had happened. K.M. said that she and Duncan continued to call each other back and forth "maybe three or four" times that night. Eventually, Duncan came to her room. K.M. testified that Duncan pushed her onto her bed, and began "rubbing" her "everywhere." He kissed her breasts, and put his fingers in her vagina. K.M. said that she was crying and telling him "no" while it was happening. K.M. said Duncan stopped when her cell phone rang. He told her to answer her phone, and left her room.

{¶ 15} According to Duncan, K.M. called him and told him to come to her room. He thought something might be wrong, so he went. When he got to her room, she was lying

naked in her bed. Duncan said he was "shocked," and left her room immediately. K.M. chased after him with a blanket wrapped around her. Duncan said that K.M. tripped over the blanket, and as she was falling, he caught her. The blanket had fallen off of her at that point, and she was naked. Duncan explained that K.M. was trying to "gather herself" and grab her blanket, and Duncan sneezed on the left side of her body due to a "strong fragrance" that K.M. was wearing. Duncan said that K.M. begged him not to tell her father. He agreed not to tell her father that night, but said he told her that he would tell her father in the morning.

{¶ 16} K.M. testified that Duncan left her room; it was her boyfriend who had been calling her phone. K.M. said she was crying and told her boyfriend what happened. Her boyfriend called her mother and her mother talked her into telling her father. She then woke her father and Rodriguez up. Rodriguez testified that K.M. was crying hysterically when she woke them up to tell them that Duncan had "touched her." K.M.'s father and Rodriguez drove K.M. to the police station. After the police station, K.M. went to the hospital for a rape-kit test.

{¶ 17} Renee Hotz, a forensic and sexual assault nurse, testified that K.M. told her that Duncan had vaginally penetrated her with his fingers and kissed her on her mouth and left breast. Hotz took a swab from K.M.'s left breast for DNA testing.

{¶ 18} Melissa Zielaskiewicz, a forensic scientist at the Bureau of Criminal Identification and Investigation ("BCI"), testified that she tested swabs taken from K.M.'s

breast and perioral area, as well as standards from both K.M. and Duncan. She concluded that "[t]he partial DNA profile from the skin-stain swabs from the left breast [was] a mixture consistent with contributions from [K.M.] and [Duncan]." K.M.'s perioral area showed DNA consistent with K.M. and a minor male, meaning there was a male chromosome detected, but not enough to identify whose it was. Zielaskiewicz testified that "Duncan cannot be excluded as the major source of DNA from the skin-stain swabs from the left breast."

## Sufficiency and Weight of the Evidence

{¶ 19} In his first and second assignments of error, Duncan claims that his conviction was not supported by sufficient evidence and was against the weight of the evidence. We disagree.

{¶ 20} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 21} In reviewing a claim challenging the manifest weight of the evidence, "[t]he question to be answered is whether there is *substantial*

evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) *Leonard* at ¶81.

{¶ 22} To convict Duncan of gross sexual imposition, the state had to prove beyond a reasonable doubt that Duncan had sexual contact with K.M. by purposely compelling her "to submit by force or threat of force." R.C. 2907.05(A)(1). "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 23} Regarding sufficiency of the evidence, Duncan argues that because the BCI forensic scientist could not determine if the DNA found on K.M.'s left breast was from Duncan's sneeze or from him kissing her, the state failed to present "definitive evidence" that "there was sexual contact with K.M. compelled by force." We disagree. Even without DNA evidence, K.M.'s testimony alone satisfied the state's sufficiency burden such that a trier

of fact could find beyond a reasonable doubt that Duncan committed gross sexual imposition against K.M.

{¶ 24} With respect to weight of the evidence in this case, Duncan's argument comes down to credibility, i.e., whether the trier of fact believed K.M. or Duncan. When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson* (Mar. 17, 2000), 11th Dist. No. 98-T-0183.

{¶ 25} Duncan maintains that the "testimony and evidence determining that [he] did have [sexual contact] with the victim by force or threat of force is unreliable at best." But after reviewing the entire record, we conclude that this case is not the "exceptional case in which the evidence weighs heavily against the conviction," such that Duncan's conviction should be reversed and he should receive a new trial. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 26} Duncan's first and second assignments of error are overruled.

Maximum Prison Sentence

{¶ 27} In his third assignment of error, Duncan contends that the trial court erred when it sentenced him to the maximum prison term because it failed to make the required findings under R.C. 2929.14(C) that his gross sexual imposition offense is not "the worst form of the offense." We find no merit to his argument.

{¶ 28} This court reviews a felony sentence according to the two-prong test set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. First, we must ensure that the sentencing court complied with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. Id. at 25. If the sentence is not contrary to law, we then determine if the trial court abused its discretion in imposing the sentence. Id.

{¶ 29} In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court severed portions of Ohio's felony sentencing law after finding them unconstitutional, including R.C. 2929.14(C). The Court held, in pertinent part, that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Further, the Court stated that "[o]ur remedy does not rewrite the statute, but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) ***." Id. at ¶ 102.

**{¶ 30}** Thus, the trial court was not required to make findings that Duncan's sentence was the "worst form of the offense" before sentencing him to the maximum prison term for a fourth-degree felony. Accordingly, we find Duncan's argument to be without merit and overrule his third assignment of error.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, J., and
KATHLEEN ANN KEOUGH, J., CONCUR